# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

Assigned on Briefs January 5, 2010

## STATE OF TENNESSEE  v. CORTINO HARRIS

**Direct Appeal from the Circuit Court for Madison County**
**No. 08-147      Donald H. Allen, Judge**

**No. W2009-00457-CCA-R3-CD  - Filed February 2, 2010**

The defendant, Cortino Harris, was convicted by a Madison County Circuit Court jury of possession of marijuana with intent to sell and possession of marijuana with intent to deliver, Class E felonies, and evading arrest, a Class A misdemeanor.  The court merged the felony drug convictions and sentenced the defendant as a Range II multiple offender to four years in the Department of Correction.  The court sentenced the defendant to eleven months, twenty-nine days on the misdemeanor conviction, to be served consecutively to the felony sentence.  On appeal, the defendant challenges the sufficiency of the convicting evidence and the trial court's imposition of consecutive sentences.  After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which J.C. MCLIN and CAMILLE R. MCMULLEN, JJ., joined.

Gregory D. Gookin, Assistant Public Defender, for the appellant, Cortino Harris.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

This case arises out of a drug transaction that was witnessed by an undercover officer for which the defendant was indicted on possession of marijuana with intent to sell, possession of marijuana with intent to deliver, and misdemeanor evading arrest.

Sergeant Jamie Blankenship with the Jackson Police Department testified that she was called to the parking lot of a Phillips 66 gas station on the night of October 21, 2007, in response to Sergeant Whitman's locating a vehicle that had been involved in a drug transaction. Upon her arrival, Sergeant Blankenship noticed the defendant, the former driver of the vehicle, standing outside the vehicle, Sergeant Whitman standing next to the defendant, and a passenger still sitting in the front passenger seat. Sergeant Blankenship recalled that Sergeant Whitman was explaining to the defendant why he had been stopped, what the allegation was against him, and what he needed to do.

Sergeant Blankenship testified that Sergeant Whitman requested to pat down the defendant and search his vehicle, but the defendant "bec[a]me very agitated" and would not consent to a patdown or search of his vehicle. Sergeant Whitman and the defendant continued "back and forth" with Sergeant Whitman telling the defendant he needed to put his hands on the trunk of the car and the defendant refusing, at which point Sergeant Blankenship took a step toward the defendant and the defendant "bolted and fled." Sergeant Whitman and Officer Haney unsuccessfully pursued the defendant on foot, while Sergeant Blankenship stayed with the vehicle and the passenger. The passenger agreed to a search of his person, which did not reveal any controlled substances or contraband, and he was allowed to leave the scene. Sergeant Blankenship inventoried the vehicle before it was towed, during which she found a third-full box of ziplock bags in the back floorboard and a large quantity of what appeared to be marijuana tightly wrapped in cellophane in the console area. She noted that the marijuana was packaged in a way that was "common practice for narcotic sales."

On cross-examination, Sergeant Blankenship acknowledged that when she arrived, the defendant had already given Sergeant Whitman his driver's license and vehicle registration information. Sergeant Blankenship stated that when she stepped toward the defendant, she was not attempting to place him under arrest but instead was planning on detaining him until another individual arrived who could identify the vehicle as being involved in the drug transaction. On redirect examination, Sergeant Blankenship testified that the passenger was allowed to leave the scene because the officers were able to verify his identity, he did not have any outstanding warrants, and there was no reason to detain him further.

Brenda McNeil, an evidence technician for the Madison County Sheriff's Department Narcotics Unit, testified that she transported the drug evidence seized in this case to and from the laboratory in Memphis for testing.

Agent Melanie Johnson, a forensic scientist with the Tennessee Bureau of Investigation's crime laboratory, testified that she tested the substance recovered in this case

and determined that it was 57.4 grams of marijuana.

Officer Tikal Greer with the Jackson Police Department testified that he was working an auto burglary detail the night of October 21, 2007, when he saw what appeared to be a drug transaction take place. He noticed two cars, one silver and one black, "backed in facing east at PetSmart" approximately 100 feet from his location in the parking lot between PetSmart and another establishment. A white male got out of the silver vehicle and got into the backseat of the black vehicle and talked to the two occupants of the black vehicle. The white male then returned to the silver vehicle, discussed something with his passenger, and returned to the black vehicle. Officer Greer then saw "an exchange between the white male and one of the occupants of the black vehicle," but he could not determine which occupant made the exchange. Afterward, the white male got out of the black vehicle and returned to the silver car. The exchange took approximately ten minutes.

Officer Greer testified that both cars left the scene. Not wanting to reveal his identity as an undercover officer, Officer Greer radioed for assistance from other officers in stopping the vehicles. Officer Greer recalled that Sergeant Whitman stopped the black car. Upon traveling to the scene of the stop, Officer Greer verified that it was the same car he had seen at PetSmart but noted that only the passenger was present.

Officer James Avery with the Jackson Police Department testified that he received a radio call from Officer Greer the night of October 21, 2007, regarding two vehicles being involved in a possible drug transaction. Officer Avery stated that he assisted another officer in the traffic stop of the silver vehicle, a Honda Accord with two white male occupants. A search of the vehicle revealed a small bag of marijuana.

Sergeant Phillip Whitman with the Jackson Police Department testified that he responded to Officer Greer's call on October 21, 2007, and began following the black vehicle, an Infiniti car. Sergeant Whitman activated his patrol car's emergency lights, and the black car pulled into the parking lot of a Phillips 66 gas station. The driver, identified as the defendant, gave Sergeant Whitman his license and registration.

Meanwhile, Sergeant Whitman was informed that narcotics had been recovered from the silver vehicle, so he approached the black car again to ask the defendant for permission to search. He recalled that the defendant stepped out of the car, and Sergeant Whitman informed him that he was going to conduct a pat-down search for his safety. The defendant told Sergeant Whitman that he could not "search [him] or [his] car." When Sergeant Whitman informed the defendant that it was standard procedure, "[the defendant] broke and ran."

Sergeant Whitman recalled that the passenger remained in the vehicle, and they let him go after conducting a warrant check on him. The officers conducted an inventory search of the defendant's abandoned vehicle and located marijuana in the console. They also found an open box of plastic bags, which piqued Sergeant Whitman's curiosity because "that's what you would do to package for resell." Sergeant Whitman identified the defendant's driver's license that he had left that night, as well as the vehicle registration showing that the vehicle was registered to the defendant.

Sergeant Whitman testified that he did not arrest the defendant that night because the defendant ran away. He said that he was about to take the defendant into custody and arrest him when he ran off.

On cross-examination, Sergeant Whitman testified that the defendant "was being detained" when he fled from the officers. Asked on redirect examination whether he was "attempting to lay hands on him to arrest him when he ran," Sergeant Whitman said, "I was fixing to. I was going to pat him down and basically just like I said to follow procedure."

Following the conclusion of the proof, the defendant was convicted on all three counts as charged.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant first argues that the evidence was insufficient to sustain his convictions. When reviewing a challenge to the sufficiency of the convicting evidence, we note that the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

To sustain the defendant's drug convictions, the State had to show beyond a reasonable doubt that the defendant knowingly possessed "not less than one-half ( ½ ) ounce (14.175 grams) nor more than ten pounds (10 lbs.) (4535 grams) of marijuana" with the intent to deliver or sell it. Tenn. Code Ann. § 39-17-417(a)(4), (g)(1) (2006). Possession of drugs may be constructive as well as actual. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001); State v. Transou, 928 S.W.2d 949, 955-56 (Tenn. Crim. App. 1996); State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). "Constructive possession requires that a person knowingly have the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. In essence, constructive possession is the ability to reduce an object to actual possession." State v. Copeland, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984) (citation omitted). Criminal liability may result from sole possession or joint possession with another person. See State v. Richards, 286 S.W.3d 873, 885-886 (Tenn. 2009).

To convict the defendant of misdemeanor evading arrest, the State had to prove that the defendant intentionally fled from a person he knew to be a law enforcement officer while knowing that the officer was attempting to arrest him. Tenn. Code Ann. § 39-16-603(a)(1)(A) (2006).

In the light most favorable to the State, the evidence shows that Officer Greer observed a drug transaction take place between the occupants of two vehicles. Upon initiating a traffic stop of one of the vehicles, Sergeant Whitman obtained the driver's license and vehicle registration from the driver, identified as the defendant. The vehicle was registered to the defendant. Meanwhile, a stop and search of the other vehicle revealed a small bag of marijuana. Informed of this information, Sergeant Whitman requested to pat-down the defendant and search his car, but the defendant refused and ran away. An

inventory search of the defendant's abandoned vehicle revealed 57.4 grams of marijuana wrapped in a way indicative of resell and a partially used box of plastic bags, also indicative of resell. This evidence was sufficient for a rational trier of fact to conclude that the defendant constructively possessed, either solely or jointly with his passenger, marijuana with the intent to sell or deliver.

As to the evading arrest conviction, the defendant has argued on appeal that the issue, as to this claim, is "first, whether Sergeants Blankenship and Whitman were attempting to arrest [the defendant] when they tried to grab his arm and, second, whether [the defendant] knew that he was about to be arrested." We note that, in his motion for new trial, the defendant made the general claims, without amplification, that the evidence was insufficient to sustain his convictions. At the hearing on the motion, no argument was presented as to the conviction for evading arrest. Accordingly, the trial court was not afforded the opportunity to consider the more specific arguments which are made on appeal.

Nevertheless, in the light most favorable to the State, the evidence shows that Sergeant Whitman pulled the defendant over by activating the blue lights on his marked patrol car. He informed the defendant "why he had made the stop and what the allegation had been and . . . explain[ed] to him what he needed to do." Sergeant Whitman said that he was about to place the defendant in custody and arrest him when the defendant ran. Even though Sergeant Blankenship testified that she was not attempting to arrest the defendant when she reached for him, Sergeant Whitman was the primary officer involved in the interaction with the defendant and Sergeant Blankenship's involvement was only auxiliary. Based on this evidence, a rational trier of fact could conclude that when the defendant fled, Sergeant Whitman was about to arrest him, and the defendant should have known Sergeant Whitman was attempting to arrest him having been informed of the allegation against him.

## II. Sentencing

On appeal, the defendant argues that the trial court erred in imposing consecutive sentences. When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163,

166 (Tenn. Crim. App. 1993), <u>overruled on other grounds by</u> <u>State v. Hooper</u>, 29 S.W.3d 1, 9 (Tenn. 2000).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statistical information provided by the administrative office of the courts as to Tennessee sentencing practices for similar offenses; (h) any statements made by the accused in his own behalf; and (i) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2006); <u>State v. Taylor</u>, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2006), Sentencing Commission Cmts.; <u>Ashby</u>, 823 S.W.2d at 169.

At the sentencing hearing, the thirty-four-year-old defendant testified that his felony conviction in California for possession of cocaine for sale was actually a misdemeanor conviction for simple possession of cocaine. The defendant denied that he was involved in the incident in this case and said that he had tried to report that his car had been stolen. On cross-examination, the defendant admitted that his California conviction for burglary in the second degree was a felony, but he said "[t]hey had dropped it [and] [he] never went to the penitentiary."

The court first merged the defendant's convictions for possession with intent to sell and possession with intent to deliver into one conviction. The court discussed the defendant's criminal record as indicated in the presentence report and determined that he was a Range II multiple offender. The court enhanced the defendant's sentence within the range based on his approximately twenty-two prior misdemeanor convictions, his being a leader in the commission of the offense, and his failure to previously comply with a sentence involving release in the community. <u>See</u> Tenn. Code. Ann. § 40-35-114(1), (2), (8). The court applied slight mitigation to the fact the offense did not involve or threaten serious bodily injury. <u>See id.</u> § 40-35-113(1). The court sentenced the defendant to four years on the felony drug conviction and eleven months, twenty-nine days on the misdemeanor evading arrest conviction.

The court found that the defendant's testimony was not truthful, which reflected poorly on his amenability to rehabilitation. The court determined that a sentence of confinement was necessary to protect society from a defendant with a long history of criminal conduct, to avoid deprecating the seriousness of the offenses, and that measures less restrictive than confinement had recently and frequently been applied to the defendant

without success.

The defendant contests on appeal the trial court's ordering that his sentences be served consecutively. Tennessee Code Annotated section 40-35-115(b) provides that a trial court may, in its discretion, order sentences to run consecutively if it finds by a preponderance of the evidence that the defendant is an offender whose record of criminal activity is extensive. Tenn. Code Ann. § 40-35-115(b)(2) (2006). The presentence report shows that the defendant has approximately twenty-five prior felony, misdemeanor, or traffic offense convictions stemming from the age of eighteen. As such, the trial court was clearly within its discretion in ordering consecutive sentencing based on the defendant's record of criminal activity.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE